UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWIGHT BROWN,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                        Case No. 1:11-CV-1179

RAYMOND INGRAHAM, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Baker's Motion for Summary Judgment</u>, (dkt. #8), <u>Defendant Ingraham's Motion for Summary Judgment</u>, (dkt. #10), and <u>Defendant Kangas, Lange, Pfost, and Schwarz's Motion for Summary Judgment</u>, (dkt. #16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions all be **granted** and Plaintiff's action **dismissed**.

### BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff began experiencing foot pain in 1998 and in 2005 was diagnosed with pes planus[1] and arthritis. On June 19, 2007, Dr. Haresh Pandya authorized a special accommodation for Plaintiff to receive high-top gym shoes. On July 13, 2007, Plaintiff received such shoes. In July 2009, Plaintiff was transferred from the Ionia Correctional Facility (ICF) to the Lakeland Correctional Facility (LCF).

---

[1] Pes planus refers to "flat feet," a "common condition" that in "most [circumstances] do[es] not cause pain or other problems." *See* Flat Feet, available at http://www.nlm.nih.gov/medlineplus/ency/article/001262.htm (last visited on June 6, 2012).

On October 13, 2009, and again on October 15, 2009, Nurse Practitioner Suzanne Kirk directed that Plaintiff continue to receive high-top gym shoes. On February 12, 2010, Plaintiff "sent a letter" to Health Unit Manager Nancy Lange informing her that he had recently been provided with "the wrong kind of shoes." Plaintiff requested that Lange "rectify the situation." Registered Nurse, M. Baker instructed Plaintiff to "contact quartermaster for show replacement." On October 7, 2010, Plaintiff "kited the quartermaster" requesting that he be provided with the appropriate shoes.

On October 7, 2010, Plaintiff reported to Health Care complaining of "pain and aches in his feet, ankles, knees and back due to his bad feet and improper shoes." Plaintiff was examined by Nurse Practitioner Raymond Ingraham who concluded that Plaintiff did not require specially prescribed shoes. Ingraham did, however, inform Plaintiff that he could purchase his own high-top gym shoes if he desired. Plaintiff declined to purchase his own shoes and was never provided with the shoes he requested.

Plaintiff initiated the present action on November 4, 2011, against Raymond Ingraham, Janis Pfost, Nancy Lange, Diane Schwarz, Gary Baker, and Timothy Kangas. Plaintiff alleges that the failure by Defendants to provide him with high-top gym shoes violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff has sued Defendants Ingraham, Pfost, Lange, Schwarz, and Baker in their individual capacity only and has sued Defendant Kangas in his official capacity only. Plaintiff is seeking declaratory, injunctive, and monetary relief. Defendants have all moved for summary judgment on the grounds discussed below.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.       Defendants Schwarz and Baker**

Plaintiff has been permitted to proceed as a pauper in this matter. Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the court determines that. . .the action. . .fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court subsequently clarified, to satisfy this Rule a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

The only allegations in Plaintiff's complaint against Defendants Schwarz and Baker are that Plaintiff was dissatisfied with Defendants' responses to certain grievances he filed. (Dkt. #1 at ¶¶ 46, 55). However, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See King v. Zamiara*, - - - F.3d - - -, 2012 WL 1848619 at *17 (6th Cir., May 22, 2012). Liability in a § 1983 action does not, therefore, attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial

of a prisoner's grievance states no claim of constitutional dimension"). Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Schwarz and Baker be dismissed for failure to state a claim on which relief may be granted.

## II.     Defendants Ingraham, Pfost, and Kangas

Defendants Ingraham, Pfost, and Kangas argue that they are entitled to relief because Plaintiff has failed to properly exhaust his administrative remedies as to the claims asserted against them.

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See also, Porter v. Nussle*, 534 U.S. 516, 520 (2002) (holding that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

>requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the

determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In response to Defendants' motions, Plaintiff asserts that he submitted four separate grievances regarding the subject matter of his complaint. A review of these particular grievances, however, reveals that Plaintiff has failed to properly exhaust his claims against Defendants Ingraham, Pfost, or Kangas.

### A. Grievance LCF-2010-10-2105-12I1

Plaintiff initiated this grievance on October 13, 2010, against Defendants Ingraham and Lange, as well as the Regional Health Care Administrator, alleging that his request for special shoes was denied. (Dkt. #10, Exhibit A). Plaintiff pursued this grievance through the first two steps of the grievance process, but his Step III grievance was rejected as untimely. Because Plaintiff failed to comply with the MDOC's timeliness requirements, and such was the basis for rejecting the grievance, Plaintiff failed to properly pursue this grievance through all three steps of the grievance process. Thus, this particular grievance fails to exhaust any of the claims asserted in this matter.

B.   Grievance LCF-2011-01-0091-12I2

Plaintiff initiated this grievance against Defendant Lange, alleging that on January 18, 2011, she denied his request for high-top gym shoes. (Dkt. #10, Exhibit A). Plaintiff pursued this grievance through all three steps of the grievance process. Thus, while this grievance serves to exhaust Plaintiff's claims against Defendant Lange, it fails to exhaust Plaintiff's claims against any other defendant.

C.   Unidentified Grievance #1

Plaintiff asserts that on July 24, 2011, he filed a grievance against Defendants Schwarz, Ingraham, Baker, Pfost, and two other individuals alleging that his request for high-top gym shoes was denied. (Dkt. #1 at ¶ 64; Dkt. #15, Exhibit 1). Plaintiff concedes, however, that this grievance was rejected at Step I of the grievance process as duplicative of a previously asserted grievance. (Dkt. #1 at ¶ 65). Plaintiff did not pursue the matter further. Accordingly, this grievance fails to exhaust any of the claims asserted in Plaintiff's complaint.

D.   Unidentified Grievance #2

Plaintiff asserts that on December 14, 2011, he submitted a grievance against Mr. Scheidler alleging that his request for high-top gym shoes was denied. (Dkt. #24). This grievance is not asserted against any of the defendants in this matter. Moreover, because this grievance was not submitted until *after* the present lawsuit was initiated, such cannot serve to exhaust any of the claims asserted therein. *See, e.g., Hubbard v. Prison Health Services*, 2011 WL 7639803 at *3 (E.D. Mich., Mar. 24, 2011) ("a prisoner must exhaust his administrative remedies before filing a complaint under

42 U.S.C. § 1983"). This grievance, therefore, fails to properly exhaust any of the claims asserted in Plaintiff's complaint.

In sum, the Court concludes that the only claim that Plaintiff has properly exhausted is his claim that on January 18, 2011, Defendant Lange denied Plaintiff's request for high-top gym shoes. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Ingraham, Pfost, and Kangas be dismissed without prejudice for lack of exhaustion.

Defendants Schwarz and Baker also moved for relief on exhaustion grounds. As previously discussed, the undersigned recommends that Plaintiff's claims against Defendants Schwarz and Baker be dismissed with prejudice for failure to state a claim. Should this recommendation not be adopted, however, the undersigned recommends, in the alternative, that Plaintiff's claims against Defendants Schwarz and Baker be dismissed without prejudice, for the reasons stated above, for failure to exhaust administrative remedies.

### III.        Defendant Lange

As previously noted, the only claim which Plaintiff has properly exhausted is his claim that on January 18, 2011, Defendant Lange denied his request for high-top gym shoes. Plaintiff asserts that Defendant Lange's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the

unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of

medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of her motion for summary judgment, Defendant Lange has submitted an affidavit in which she concedes that she "denied [Plaintiff's] request for specialized high top shoes." (Dkt. #17, Exhibit C). Lange asserts that in response to Plaintiff's request she reviewed his medical record which indicated that on October 7, 2010, Plaintiff's "medical provider" determined that Plaintiff had "no indication for special shoes." *Id.* This assertion is confirmed by an excerpt of Plaintiff's medical record which indicates that on October 7, 2010, Plaintiff was examined by Defendant Ingraham. (Dkt. #17, Exhibit D). The results of this examination were unremarkable and Ingraham concluded that Plaintiff did not require special shoes. *Id.*

Plaintiff has submitted no evidence which contradicts Defendant Lange's assertion that when she denied Plaintiff's request for special shoes the most recent medical determination on the matter was that Plaintiff did not require such. As Defendant Lange asserts, "as a Health Unit Manager, it was my duty to follow the instructions and directives provided by the Medical Service Provider." (Dkt. #17, Exhibit C). Given the unrefuted evidence that Defendant Lange acted in response to a medical provider's determination that Plaintiff did not require high-top gym shoes, Plaintiff's claim fails at step two of the analysis. Even if the Court assumes that Plaintiff was experiencing a serious medical condition, Defendant Lange has established that she did not disregard a known risk to Plaintiff's health or safety. In other words, Plaintiff cannot establish that Defendant Lange acted with a "sufficiently

culpable state of mind." Accordingly, the undersigned recommends that Defendant Lange's motion for summary judgment be **granted**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Baker's Motion for Summary Judgment, (dkt. #8), be **granted**; Defendant Ingraham's Motion for Summary Judgment, (dkt. #10), be **granted**; Defendant Kangas, Lange, Pfost, and Schwarz's Motion for Summary Judgment, (dkt. #16), be **granted**; and Plaintiff's action **dismissed**.  The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  July 12, 2012         /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge